## WHEAT *vs.* WHEAT'S EXECUTORS.

1. A testator bequeathed his slaves to his widow and five living children, with specific directions as to their partition, and died intestate as to the residue of his personal property and all of his real estate ; the seventh clause of his will provided, that, if a certain child of a deceased son should arrive at the age of twenty-one years, then the testator's widow and children should make, with what his guardian had paid him, an equivalent to their own shares at the time of division ;' and the eight clause directed, ' that all of his heirs who had received advancements should render in the amount, in valuation, at the time of the division, to be considered so much of their shares of the estate :' *Held*, that the testator's said grand-son, whose father had received an advancement, was entitled to a distributive share of the real and personal estate unbequeathed, on his accounting for the advancement to his father, and that the legatees of the slaves were bound to contribute from their legacies, on his arrival at the age of twenty-one years, so much as would make his entire estate equal to their respective portions.

APPEAL from the Court of Probate of Chambers.

THE questions presented in this case arose on the final settlement of the estate of Moses Wheat, deceased, whose will contained the following provisions : By the third clause, he directs certain negroes, specified by name, to be divided into six lots, and the lots to be appraised by three freeholders ; the next clause directs that the widow shall have her choice of these lots, and that the remaining five shall be divided by lot among the testator's five living children ; the next clause provides, that the residue of his negroes shall be appraised at the same time,

and by the same appraisers, "and that the appraisers shall add all of the said negroes to the six lots above named, so as to make each as nigh equal as possible," in order that his widow and each one of his children may have an equal share. The other clauses of the will are as follows :

"Sixth. It is my will and desire, that enough of the south-west corner of section 17 be run off so as to take the barn, and for the same to be added to section 18 ; and twenty acres from section 18 to be added to section 17 ; the line to commence at the half-mile stake between 17 and 18, and run west until it strikes the branch, and then up the branch far enough to include twenty acres.

"Seventh. It is further my will and desire, that if Francis H. Wheat, my grand-son, should arrive at the age of twenty-one years, my beloved wife, Artimesia Wheat, and my said children, do make, with what the guardian pays him, or may have paid him, on his arrival at twenty-one years of age, an equivalent to their own shares in valuation at the time of the division.

"Eighth. It is also my will, that all of my heirs that has had property from me shall render in the amount, in valuation, at the division of my property, and shall be considered as so much of their shares or part of the estate."

It was admitted, on the final settlement, that said Francis H. Wheat, the testator's grand-son, was entitled to a distributive portion of one sixth of the estate, unless he is excluded by the aforesaid will; that the widow had dissented from the will, and had received one fifth of all the personal property of the estate and her dower interest in the lands ; that there was in the hands of the executors, subject to distribution, the sum of $9250 23, which was derived from the sale of the personal property other than the negroes disposed of by the will ; that the testator died intestate as to his real estate, and that his lands had been sold by the executors for the purpose of distribution ; that there is in the hands of said executors, subject to distribution, the sum of $7321 68, derived from the sale of said lands; that the father of said Francis H. Wheat, who was a son of said testator, had received in his life-time, from said testator, the sum of $1200 as an advancement : that said testator became the guardian of said Francis, on the death of his

Wheat v. Wheat's Executors.

father, and so continued until his death; that the estate of said Francis, in the hands of his guardian, amounted to the sum of $5,868; that the negroes conveyed by said will, according to the valuation, were worth $29,300, and each legatee's portion, after deducting the widow's fifth, was, at the time of distribution, $4,688.

Upon this state of facts, the court refused to allow said Francis H. Wheat any portion whatever of the said sums in the hands of the executors for distribution, derived from the sale of the real estate and personal property other than negroes, as above stated; to which decision of the court the said Francis, by his guardian *ad litem*, excepted, and he how assigns it for error.

M. ANDREWS, for plaintiff in error.

P. M. ALLISON, *contra*.

PHELAN, J.—We are of opinion, that the testator, Moses Wheat, did not devise nor intend to devise, his lands, and, furthermore, that he did not bequeath any portion of his personal property except his slaves.

We come to this conclusion in part for the following reasons: although the testator made a very special and full bequest of his slaves, and although it appears that he had at that time a large amount of personal property other than his slaves (about 18,000 worth), and also lands of considerable value (over $7000 worth), he made no express provision in his will in regard to either, except an unimportant one about taking a few acres from one section and adding them to another. That he did not intend to devise his lands, is further shown by the fact that his will is attested by only two witnesses, when the statute requires three to pass lands.

Again; in clause seven of this will he says: "It is also my will, that all my heirs that has had property from me, shall render in the amount in valuation at the division of my property, and shall be considered as so much of their shares or part of the estate." This clause evidently contemplates a division of his property; that is, of his whole property or estate, and not the particular division of the slaves as directed in the third, fourth and fifth clauses. It further contemplates a division

among his heirs—that is, heirs at law in its proper legal sense—and not his children then living only, to whom the slaves had been bequeathed under a certain trust or condition. His grandson, as the only surviving child of his father, the testator's son, was a regular heir at law presumptive of his grand-father; and, besides, the proof shows, that his father, the testator's son, had received an advancement of about $1200 from the testator. In view of these facts, it can hardly be supposed, that the testator intended to confine the use of the word heirs to his children then living exclusively.

If we have given the true construction to this will, it follows, of course, that as to his lands, and all his personal property except his slaves, Moses Wheat died intestate. Under this construction, there can be but little difficulty in determining the rights of the several parties under the law and this will taken together.

The widow, having dissented from the will, is, of course, entitled to her dower in the lands, and her regular distributive share, which, in this case, would be one fifth of all the personal property after the payment of debts, as there were more than four children.—Clay's Dig. 173 § 4.

The negroes which would remain after deducting her fifth part, would have to be divided into five shares, as nearly conformable to the directions of the will as possible, among his five living sons and daughters named in the fourth clause of the will, and these slaves they would hold respectively subject to the trust in favor of his grand-son, Francis H. Wheat, created by the seventh clause; that is, as we construe it, under an obligation to contribute respectively so much as would, in the aggregate, make his estate or property in the hands of his guardian, when he arrived at the age of twenty-one years, equal in valuation to their respective shares of his estate at the time of the division of said estate; if, or on condition that he (Francis H.) arrived at the age of twenty-one. We may say, in few words, that this will left the land, and all the personal property except the slaves, to be divided and distributed according to the law of descent and distribution; and as to the slaves, they were bequeathed to the sons and daughters of the testator then living, but on the express trust and condition, that, if his grand-son attained the age of twenty-one, and if his estate or property

did not then in the whole amount to as much as they respectively received as a share of his estate under his will, or otherwise, at the time of the division of said estate, then they were respectively bound to contribute so much as, taken in the aggregate, would make his estate or property equal in value to a share at the time of the division.

The decree of the Probate Court, which excluded Francis H. Wheat from any portion of the proceeds of the sale of the land, or the proceeds of the personal property other than the slaves specially bequeathed as aforesaid, was erroneous.

The advancement to his father in his life-time, made by the testator, should be deducted from his share, or one sixth part of the proceeds of the land and other personal property, (omitting the slaves,) and a decree rendered in his favor against the executors for the balance, and the decrees in behalf of the others should be modified accordingly.

It has been argued, that he should not be required to bring the advancement made to his father into hotchpot, upon some supposed intention of the testator to put his grand-son on a perfect equality with his own children. We cannot discover such intention, and the clause requiring his heirs who recovered advancements to "render them in at the division of his property," is express and plain.

For the error aforesaid, the decree of the Probate Court is reversed, and the cause is remanded, that said court may proceed in conformity with the views expressed in this opinion.